**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN BOADEN, JAMES A. CARLSON, WILLIAM B. COSTELLO, and WILLIAM L. MILLER on behalf of themselves and all others similarly situated, | Case No.: |
| | CLASS ACTION |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| CONTINENTAL CASUALTY COMPANY, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

**Page**

I.    NATURE OF THE CASE ..................................................................................................1

II.   JURISDICTION .............................................................................................................3

III.  VENUE ..........................................................................................................................4

IV.   PARTIES ........................................................................................................................4

V.    FACTUAL ALLEGATIONS ..........................................................................................5

      A.    Continental promises that any future rate increases would be uniform across all premium classes. ...........................................................................................5

            1.    Continental's Group Policy terms and background. ....................................5

            2.    Continental's Group Policy marketing statements and materials. .............13

      B.    Continental seeks and implements premium increases that vary within the same premium class. ..............................................................................................20

VI.   CLASS ACTION ALLEGATIONS ...............................................................................25

VII.  CAUSES OF ACTION ..................................................................................................28

FIRST CAUSE OF ACTION (BREACH OF CONTRACT).......................................................28

SECOND CAUSE OF ACTION (FRAUD) ................................................................................29

THIRD CAUSE OF ACTION (FRAUDULENT CONCEALMENT) ........................................30

FOURTH CAUSE OF ACTION (DECLARATORY RELIEF) ..................................................32

PRAYER FOR RELIEF ..............................................................................................................33

JURY TRIAL DEMAND .............................................................................................................33

## I.      NATURE OF THE CASE

1.      Plaintiffs purchased long-term care insurance coverage from Continental Casualty Company, which promised to keep premiums consistent for all insureds in the same age group. Instead, Continental breached this promise by imposing rate increases at different times and in different amounts from one state to the next.[1]

2.      Like any other contracting party, an insurance company must honor promises made in its contracts. And because premiums for long-term care coverage are paid in advance—usually for decades—with services to be rendered in the future, long-term care insurers must comply with the policy's terms on future premium increases and tell the truth about how premiums can be increased.

3.      When marketing materials and the policy declare that premiums will not be increased unless they are changed for everyone in the same age group, an insurance company must not increase premiums at different times or in different amounts for insureds within the same age group. Similarly, an insurer must not promise that it will change premiums based only on age group when it knows that it will also vary future premium increases based on state of residency.

4.      Long-term care coverage buyers are agreeing to pay considerable premiums in advance, over an extended period of time, in exchange for future, long-term financial security when the need for long-term care eventually arises. To understand the value of the coverage, consumers count on their insurer to accurately describe the process and the commitments it makes and to honor its promises made in touting the policy and in the contract language.

---

[1] Long-term care insurance covers the costs associated with necessary care due to cognitive impairment or for assistance with the activities of daily living due to disability or old age, costs not generally covered by health insurance.

5.      Continental has broken these rules. Its marketing materials and policy promise that insureds within the group will be paying equivalent premiums (depending solely upon age at the time of enrollment), regardless of the state they are in. Its marketing materials and policy further promise that insureds will never be singled out for a rate increase—that rate increases will only occur if they change the rates for all insureds in the same age group. But instead of abiding by these promises, Continental has done the opposite. Continental has imposed rate increases at different times and/or in different amounts from one state to the next. As a result, insureds within the same age group pay different premiums from one another, even though they are members of the same age group, premium class, and risk pool, and all started from the same initial age-group related premium as of the time of purchase.

6.      Continental's decisions to seek and implement rate increases on terms that are inconsistent with nationally uniform rate increases blatantly violate its promises of uniform premium increases across the customers who purchased group long-term care insurance, that is, the Class. This Court has allowed similar claims to proceed. *Sieving v. Continental Casualty Company,* Case No. 1:20-cv-05127, Dkt. No. 36*; Brown v. Continental Casualty Company,* Case No. 1:21-cv-02349, Dkt. No. 26*; Cheslow v. Continental Casualty Company,* Case No. 1:21-cv-04010, Dkt. No. 34*; and Gunn v. Continental Casualty Company,* Case No. 1:18-cv-03314, Dkt. No. 117.

7.      Continental's representations regarding its premiums and its decisions to seek and implement rate increases that are inconsistent with nationally uniform rate increases constitute common law fraud because Continental has knowingly and intentionally misrepresented or fraudulently concealed the nature of its premiums to consumers. This Court has allowed similar claims to proceed. *Sieving v. Continental Casualty Company*, Case No. 1:20-cv-05127, Dkt. No.

2

36; *Brown v. Continental Casualty Company*, Case No. 1:21-cv-02349, Dkt. No. 26; *Cheslow v. Continental Casualty Company*, Case No. 1:21-cv-04010, Dkt. No. 34; and *Gunn v. Continental Casualty Company*, Case No. 1:18-cv-03314, Dkt. No. 117.

8.     Continental knew its promises of uniform rate increases were false because it marketed and sold certificates while intending to seek premium increases that varied on a state-to-state basis. For example, Plaintiffs Boaden, Carlson and Costello's rates (and the rates for many class members) have increased by 95.5%, while other insureds in their premium class had their rates increased by 25% or, in some cases, not at all. Plaintiffs' rates have increased far more than rates charged insureds in other states under the same group policy form and, upon information and belief, other group policy forms.

9.     Continental promised not to raise premiums unless it did so for all insureds in a particular age group class nationwide.

10.     Continental could have kept its promise of consistent nationwide premiums by seeking to increase premiums on terms that are consistent with a nationally uniform premium.

11.     Plaintiffs bring this class action on behalf of all those insured under Continental's group long-term care insurance policy forms ("the Group Policies"), including without limitation, policy form series GLTC 1, GLTC 2, and Independent Solutions policies, who were promised in policies, policy certificates, and/or marketing materials that their premiums would not be increased unless they were increased for all members of the same premium class. Plaintiffs seek a return of all those premiums wrongfully charged as well as declaratory relief, disgorgement of ill-gotten gains, and compensatory, statutory, and punitive damages.

## II.     JURISDICTION

12.     This Court has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount

in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiff Boaden is a citizen of South Carolina, Plaintiffs Carlson and Costello are citizens of Illinois, Plaintiff Miller is a citizen of Connecticut, and Continental is a citizen of Illinois (where it has its principal place of business) and Delaware (where it is incorporated).

13.     This Court has personal jurisdiction over Continental because Continental has its principal place of business in Chicago, Illinois and Continental issued the Group Policies to group policyholders in Illinois, including the group policies under which Plaintiffs are insured. Continental also issued Group Policies nationwide from its Illinois headquarters. This Court has personal jurisdiction over Plaintiffs because Plaintiffs' group policies were delivered in Illinois and Plaintiffs consent to this Court's jurisdiction.

### III.     VENUE

14.     Venue is proper in this District under 28 U.S.C. § 1391 because this is the district in which Continental has its principal place of business and in which Continental engineered the marketing materials, insurance policies, and premium increases giving rise to the cause of action. Continental also issued the group policies under which Plaintiffs are insured to United Airlines, Inc. ("United") and CNA Financial Corp. ("CNA") as the group policyholders in Illinois.

### IV.     PARTIES

15.     Plaintiff John Boaden is a permanent legal resident of the United States and a resident of Bluffton, South Carolina.

16.     At all times pertinent, Plaintiff Boaden was insured under a group long-term care policy issued and delivered to United Airlines, Inc. located in Illinois. Mr. Boaden was eligible for coverage under the United Policy based on his wife's employment at the time with United.

17.     Plaintiff James Carlson is a citizen of the State of Illinois and a resident of Elk Grove Village, Illinois.

4

18.     At all times pertinent, Plaintiff Carlson was insured under a group long-term care policy issued and delivered to CNA Financial Corporation ("CNA") located in Illinois. Mr. Carlson was eligible for coverage under the CNA Policy based on his employment at the time with CNA.

19.     Plaintiff William Costello is a citizen of the State of Illinois and a resident of Naperville, Illinois.

20.     At all times pertinent, Plaintiff Costello was insured under a group long-term care policy issued and delivered to CNA Financial Corporation ("CNA") located in Illinois. Mr. Costello was eligible for coverage under the CNA Policy based on his employment at the time with CNA.

21.     Plaintiff William L. Miller is a citizen of the State of Connecticut and a resident of East Granby, Connecticut.

22.     At all times pertinent, Plaintiff Miller was insured under a group long-term care policy ("Westinghouse Policy") issued and delivered to his former employer Westinghouse located in Pennsylvania. Mr. Miller was eligible for coverage under the Westinghouse Policy based on his employment at the time with Westinghouse.

23.     Continental is a Delaware corporation with its principal place of business in Chicago, Illinois.

## V.     FACTUAL ALLEGATIONS

**A.     Continental promises that any future rate increases would be uniform across all premium classes.**

**1.     Continental's Group Policy terms and background.**

24.     Long-term care insurance pays for a variety of services for people unable to care for themselves, including assistance in a home, an adult daycare center, an assisted living

5

facility, or a skilled nursing home. Continental's Group Policies provide that premiums for long-term care coverage are set at the same level for a given age group based on the benefits selected and certain underwriting factors, but none of these include the geographic location of the insured.

25.     Continental encouraged Plaintiffs and the members of the Class to purchase coverage early and assured members of the Class that by doing so they can secure a more favorable premium than they could otherwise obtain over the coming years. Similarly, Continental, as a long-term care insurer, promised Plaintiffs and the Class that by paying fair and reasonable premiums in the long run, they as insureds will get peace of mind that they are protected against the significant expenses of assisted living and other long-term care when they need it.

26.     Against these promises and representations to its customers, Continental weighed its goal to maximize profits. Asserting higher than expected costs of coverage, interest rate risk, and other adverse financial circumstances, Continental pursued a plan to maximize premium payments made by every class member. To further that plan, Continental pursued and imposed the maximum premium increase that each state would allow rather than maintaining the nationally uniform rate that it promised.

27.     Disappointed in the performance of its long-term care risk pools, Continental has sought to take out its losses on its insureds. And as the facts demonstrate, Continental is determined to protect its bottom line, regardless of its promises or the impact on an aging population that relied upon Continental's promises and representations of uniform premiums.

28.     Continental is a publicly held financial corporation that issued group long-term care insurance policies nationwide.

29.     Continental issued and delivered group long-term care policy number 9505TQ
("United Policy") to United (a "policyholder"), located in Illinois, with a policy effective date of
June 1, 2000. The United Policy is a GLTC 2 Policy. Delivery of an insurance policy to the
policyholder occurs when the underwriting process is complete and the actual policy is given to
the policyholder, confirming coverage.

30.     Continental issued and delivered group long-term care policy number 9458TQ
("CNA Policy") to CNA Financial Corporation (a "policyholder"), located in Illinois, with a
policy effective date of October 1, 2001. The Carlson CNA Policy is a GLTC 2 Policy. Delivery
of an insurance policy to the policyholder occurs when the underwriting process is complete and
the actual policy is given to the policyholder, confirming coverage.

31.     Continental issued and delivered group long-term care policy number 9970TQ
("Westinghouse Policy") to Westinghouse as the "Holder", located in Pennsylvania, with a
policy effective date of January 1, 2001. The Westinghouse Policy is a GLTC 2 Policy. Delivery
of an insurance policy to the policyholder occurs when the underwriting process is complete and
the actual policy is given to the policyholder, confirming coverage.

32.     Negotiations before issuance of the United Policy were conducted between
Continental and United, located in Illinois.

33.     Negotiations before issuance of the CNA Policy were conducted between
Continental and CNA, located in Illinois.

34.     Negotiations before issuance of the Westinghouse Policy were conducted between
Continental and Westinghouse, located in Illinois and Pennsylvania respectively.

35.    Almost thirty years ago, Plaintiff Boaden purchased a certificate of coverage under the United Policy with a "policy effective date" of May 1, 1994.[2] He has dutifully paid premiums since that date.

36.    Over thirty years ago, Plaintiffs Carlson and Costello purchased certificates of coverage under the CNA Policy with a "policy effective" dates of September 1, 1989.[3] They have dutifully paid premiums since that date.

37.    Over thirteen years ago, Plaintiff Miller purchased a certificate of coverage under the Westinghouse Policy with coverage effective date of October 1, 2009. He has dutifully paid premiums, and endured four rate increases, since that date.

38.    The Group Policies' language does not allow Continental to seek rate increases on a state-to-state basis at different levels.

39.    Under the heading **PREMIUM**, the Group Policies state:

> We cannot change the Insured's premiums because of age or health. We can, however, change the Insured's premiums based on his or her premium class, but only if We change the premiums for all other Insureds in the same premium class.

40.    According to this language, Continental promises its insureds that any premium increases will be made not just for the insured or a group of insureds within a premium class, but for all other Insureds in the same premium class.

41.    The Group Policies do not define the phrase "premium class." The sole criterion presented by Continental at the point of sale for those enrolling was age. As shown below, the rate schedules distributed to purchasers of the coverage showed rates that varied by age and benefit level only, and not by residence of the insured or place of purchase. According to the

---

[2] Plaintiff Boaden was issued a replacement certificate under a subsequently issued group policy with substantially similar terms effective June 1, 2000.

[3] Plaintiffs Carlson and Costello were issued replacement certificates under a subsequently issued group policy with substantially similar terms effective October 1, 2001.

plain meaning of the Group Policies and the reasonable understanding and expectations of an insured under the circumstances, "premium class" refers to the nationwide pool of insureds under the Group Policies within a given age group.

42.     The quoted Policy language above means that if the premium changes for one insured, the same change will apply to the premiums of all members of the premium class. The language of the Group Policies assures consumers that their rates will not be unfairly discriminatory relative to the rates paid by other members of the same premium class—which depend only upon age, as shown by the rate schedules, and not because of an undisclosed consideration of their state of residence.

43.     This understanding of the Group Policy is consistent with Continental's pooling of the Group Policies as a nationwide premium class as it admits in rate filings around the country. Continental underwrote and established the Group Policies, premium rates, and actuarial risk pools on a nationwide basis not limited or classified by their various locations in specific states. In other words, Plaintiffs' starting premiums were the same as every other certificate holder's their age who purchased coverage at the same time, regardless of their residency.

44.     As explained by Continental in a State of Maryland rate filing, "In 2015, the company began a nationwide rate increase program for the above-listed policy forms [the Group Policies] due to significant deterioration of nationwide lifetime loss ratios based on the Company's best-estimate projections. This was the first time a rate increase had been requested on these policy forms. In this program, 95.5% was requested in every state. [FN: "Except in those jurisdictions that impose annual limits"] It is the intent of the Company to submit follow-up filings, subject to the limits of COMAR 31.14.01.04(A)(5), until an actuarially equivalent

9

increase amount is attained. In an effort to provide stability to rate indications, this follow-up

filing does not consider experience development since the initial filing."[4]

45.     By this statement, Continental admits that it pooled the Group Policies together

on a nationwide basis, assessed rate adequacy on a nationwide basis, collected premiums from

new certificate holders based on these rates, and generally treated the certificate holders under

the Group Policies as a single nationwide premium class with a collective need for a 95.5% rate

increase.

46.     Despite Continental's treating all certificate holders under Group Policies as a

nationwide premium class, Continental, contrary to its promises in its contract, sought and

received differing rate increases from state to state. In some states, statutes-imposed limits on

rate increases such that Continental sought increases that varied drastically between states. For

example, in 2015 CNA sought a 15% rate increase in Maryland, while simultaneously seeking a

95.5% rate increase in Illinois and a 112.50% rate increase in Kansas, on the very same Group

Policies. The results of the rate increase requests likewise varied with Illinois approving the

95.5% increase (phased in over two years), Kansas approving just a 15% increase rather than the

full request, and Maryland approved the 15% rate increase as requested.

47.     Continental sought such premium increases on the Group Policies without regard

to its promise of nationally uniform increases, as is summarized in a chart Continental filed with

Pennsylvania regulators. *See* Exhibit A ("GLTC State Status Listing As of 5/3/2022").

48.     Had Continental wanted the flexibility of issuing rate increases that varied by

state, it could have drafted its Group Policies in a way that defined the premium class on a state-

---

[4] https://insurance.maryland.gov/Consumer/Documents/agencyhearings/Continental-
Casualty-Company-GLTC1-GLTC2-Independent-Solutions.pdf

to-state basis, just as it did in other contexts such as its individual (non-group) long-term care policies.

49.     Because Continental drafted the Group Policies based on a nationwide premium class without any reference to state-by-state premium classes, its own contract prohibits it from seeking and implementing rate increases on terms that are inconsistent with a nationally uniform premium. Put another way, because the Group Policies were sold as covering a nationwide premium class and treated by Continental as covering a nationwide premium class, Continental cannot seek a 112.50% rate increase in Kansas and a 15% rate increase in Maryland.

50.     In rate filings submitted by Continental in Connecticut and Pennsylvania concerning the Group Policies, Continental admits its rate increase program is based on the nationwide experience of the Group Policies: "The rate revision is necessary because the current best estimate projection of the nationwide lifetime loss ratio has deteriorated significantly."[5]

51.     At all relevant times, Continental treated the Group Policies as covering a nationwide premium class, not premium classes that vary from state to state. This approach is consistent with the language of the Group Policies. Indeed, Continental implemented initial rates that were nationally uniform, consistent with this understanding of the Group Policies. Continental's recent pursuit of state-to-state rate increases is the only time that Continental has failed to treat the Group Policies as covering a nationwide premium class.

---

[5] See Connecticut (https://www.catalog.state.ct.us/cid/portalApps/images/reports/10260179.pdf) and Pennsylvania (https://www.insurance.pa.gov/Consumers/ProductNotices/Documents/CNAB-130153872.pdf) rate filings describing the Group Policies' nationwide experience.

52.     Continental issued the Group Policies using the same or similar language to insureds throughout the country under policies issued to long-term care group policyholders nationwide.

53.     While Continental enrolled insureds under the Group Policies without any state-by-state class limitations on premium increases, Continental adopted, offered, and deployed individual long-term care insurance coverage ***that expressly declared premium increases would be effectuated on a state-by-state class basis***. So, Continental was aware that state-by-state language existed and could be included in policy forms, but Continental chose not to use it for the Group Policies despite using it in other long-term care policies.

54.     For example, one such policy states, "However, We may change the premium rates. Any change will apply to all policies in the same class as Yours ***in the state where the policy was issued***." (Form P1-15203-A48, issued in Wisconsin with an effective date of June 3, 1994 (emphasis added)). Thus, Continental knew precisely how to limit a premium increase class to a certain state, but it chose not to do so for the Group Policies. Continental's attempt to read such language into the Group Policies post-hoc and through creative interpretation should be rejected.

55.     Indeed, Continental admits in rate filings that the Group Policies contained no geographic underwriting component whatsoever – "Area factors are not used for these products."[6]

56.     Therefore, an insured's state of residence had no bearing on the premiums charged to them, likely because employer groups such as United Airlines, CNA, and Westinghouse have benefit-eligible employees scattered all over the country. A nationwide

---

[6] https://www.catalog.state.ct.us/cid/portalApps/images/reports/10260179.pdf at p. 21 of 44.

premium class was always how the Group Policies were handled, until Continental rolled out its rate increase program.

        **2.     Continental's Group Policy marketing statements and materials.**

      57.    Continental also made false, deceptive, and misleading representations regarding the nature of its group long-term care insurance premiums in marketing materials. For example, when it marketed the Group Policies to consumers, Continental stated:

> LEVEL PREMIUM RATES DO NOT INCREASE JUST BECAUSE YOU GROW OLDER
>
> Since your premium is based on a fixed daily benefit and on your age at the time you apply, CNA can predict the appropriate premium to charge you. As a result, premiums are expected to remain level over your lifetime. CNA reserves the right to change premiums for the entire plan if necessary based on our experience, but you can never be singled out for a rate increase because you get older, become ill, or file claims. If you elect to increase your benefits with the Future Purchase Option (FPO), your premiums will be increased at that time to pay for the additional benefits.

      58.    Continental distributed similar brochures about the Group Policies containing the same or similar marketing language to purchasers of long-term care insurance throughout the country.

      59.    Within the brochures, Continental assured Plaintiffs and Class Members that the Policy would provide long-term stability and that Plaintiffs and other Class Members would see a change in premiums only for the entire plan based on their age alone, and not be subject to disparate or discriminatory rate increases.

      60.    For example, Northwestern University prospective enrollees were told "Since your premium is based on a fixed daily benefit and on your age at the time your coverage begins, CNA can determine the appropriate premium to charge you. As a result, premiums are expected to remain level over your lifetime... Premiums may change. But for premiums to change, CNA

would have to change premiums for everyone in your age category who has the kind of coverage plan that you do."

61.     The Marines Corps Community Services prospective enrollees were told, "Level Premiums: Premiums are based on your age-at-entry and the daily benefit you select. You can never be singled out for a future increase because you become older or ill."

62.     University of Utah employees, and their family members, were told "The premium is based on your age at time of purchase and the coverage you select. …The CNA Independent Solutions Group Long-Term Care Insurance program has been designed to offer surprisingly affordable premiums that are not likely to increase over time, unless you add to your coverage. In fact, CNA has not increased premiums for any of its Group Long-Term Care plans since the product was introduced in 1988." (Footnote omitted.)

63.     The Research Foundation for the State University of New York prospective enrollees were presented with a power point presentation slide that said this:



14

64. Continental encouraged prospective insureds to buy young and illustrated the supposed value of early purchase with various charts, drawing no distinctions based on state of residency:

| Plan B - Standard Lifetime Maximum With ABI | | | |
|---|---|---|---|
| Age Entering Plan | Total Years of Coverage To Age 90 ($100 Plan) | Total Premiums Paid To Age 90 ($100 Plan) | Available Benefits At Age 90 With ABI Option |
| 40 | 50 | $15,186 | $1,092,230 |
| 50 | 40 | $17,030 | $ 670,540 |
| 60 | 30 | $27,000 | $ 411,660 |
| 70 | 20 | $37,476 | $ 252,720 |

| Plan B - High Option Lifetime Maximum With ABI | | | |
|---|---|---|---|
| Age Entering Plan | Total Years of Coverage To Age 90 ($100 Plan) | Total Premiums Paid To Age 90 ($100 Plan) | Available Benefits At Age 90 With ABI Option |
| 40 | 50 | $22,806 | $2,184,460 |
| 50 | 40 | $26,362 | $1,341,080 |
| 60 | 30 | $37,217 | $ 823,320 |
| 70 | 20 | $53,280 | $ 505,440 |

## Premium Chart A
### Inflation Protection Plan A
### Future Purchase Option
### Monthly Premiums Per Person

| AGE | Standard Lifetime Maximum | | | High Option Lifetime Maximum | | |
|---|---|---|---|---|---|---|
| | $100/ DAY | $125/ DAY | $150/ DAY | $100/ DAY | $125/ DAY | $150/ DAY |
| 18-24 | $ 4.73 | $ 5.91 | $ 7.09 | $ 6.30 | $ 7.88 | $ 9.46 |
| 25 | 5.14 | 6.42 | 7.71 | 7.00 | 8.75 | 10.50 |
| 26 | 5.30 | 6.63 | 7.95 | 7.28 | 9.10 | 10.91 |
| 27 | 5.48 | 6.85 | 8.22 | 7.58 | 9.48 | 11.37 |
| 28 | 5.67 | 7.09 | 8.50 | 7.91 | 9.88 | 11.86 |
| 29 | 5.86 | 7.33 | 8.79 | 8.24 | 10.30 | 12.36 |
| 30 | 6.07 | 7.59 | 9.10 | 8.61 | 10.76 | 12.91 |
| 31 | 6.32 | 7.89 | 9.47 | 9.03 | 11.29 | 13.54 |
| 32 | 6.60 | 8.24 | 9.89 | 9.50 | 11.88 | 14.25 |
| 33 | 6.93 | 8.67 | 10.40 | 10.05 | 12.56 | 15.07 |
| 34 | 7.29 | 9.11 | 10.94 | 10.64 | 13.30 | 15.96 |
| 35 | 7.69 | 9.61 | 11.53 | 11.28 | 14.10 | 16.92 |
| 36 | 8.13 | 10.16 | 12.19 | 11.98 | 14.98 | 17.97 |

15

# Monthly rates

The premiums shown are for payroll deduction and are *monthly* amounts.

The actual amount that will be deducted from each paycheck will depend on the frequency of your payroll cycle.

Premiums are per person and based on the individual's age on the effective date of coverage.

**Base Plan With**
**Optional Inflation Feature**
**(Lifetime Automatic Benefit Increase)**

| AGE | $100 Benefit | $150 Benefit | $200 Benefit |
|---|---|---|---|
| <25 | 19.71 | 29.56 | 39.41 |
| 25 | 22.61 | 33.91 | 45.21 |
| 26 | 22.98 | 34.47 | 45.96 |
| 27 | 23.61 | 35.42 | 47.22 |
| 28 | 24.42 | 36.63 | 48.84 |
| 29 | 25.12 | 37.69 | 50.25 |
| 30 | 25.88 | 38.82 | 51.76 |
| 31 | 26.77 | 40.16 | 53.54 |
| 32 | 27.92 | 41.87 | 55.83 |
| 33 | 29.38 | 44.07 | 58.76 |
| 34 | 31.11 | 46.66 | 62.22 |
| 35 | 33.05 | 49.57 | 66.09 |
| 36 | 35.11 | 52.67 | 70.22 |
| 37 | 37.23 | 55.85 | 74.46 |
| 38 | 39.22 | 58.83 | 78.44 |
| 39 | 41.29 | 61.94 | 82.58 |
| 40 | 43.26 | 64.89 | 86.52 |
| 41 | 45.40 | 68.11 | 90.81 |
| 42 | 47.66 | 71.48 | 95.31 |
| 43 | 49.92 | 74.88 | 99.84 |
| 44 | 52.27 | 78.41 | 104.54 |
| 45 | 54.71 | 82.06 | 109.42 |
| 46 | 57.47 | 86.21 | 114.95 |

# Your Group Long-Term Care Plan Rates

## semi-monthly rates

The premiums shown are for payroll deduction and are semi-monthly amounts.

The actual amount that will be deducted from each paycheck will depend on the frequency of your payroll cycle.

Premiums are per person and based on the individual's age on the effective date of coverage.

### Two Year Lifetime Maximum

| AGE | Option 1 $100 Benefit | Option 2 $150 Benefit | Option 3 $200 Benef |
|---|---|---|---|
| < 24 | 3.15 | 4.72 | 6.29 |
| 25 | 3.33 | 5.00 | 6.66 |
| 26 | 3.43 | 5.14 | 6.85 |
| 27 | 3.54 | 5.30 | 7.07 |
| 28 | 3.66 | 5.49 | 7.32 |
| 29 | 3.80 | 5.72 | 7.62 |
| 30 | 3.96 | 5.93 | 7.91 |
| 31 | 4.12 | 6.18 | 8.23 |
| 32 | 4.29 | 6.43 | 8.58 |
| 33 | 4.48 | 6.73 | 8.96 |
| 34 | 4.69 | 7.03 | 9.38 |
| 35 | 4.93 | 7.38 | 9.85 |
| 36 | 5.18 | 7.76 | 10.35 |
| 37 | 5.44 | 8.16 | 10.89 |
| 38 | 5.73 | 8.59 | 11.45 |
| 39 | 6.02 | 9.02 | 12.04 |
| 40 | 6.31 | 9.48 | 12.64 |
| 41 | 6.64 | 9.95 | 13.27 |
| 42 | 6.98 | 10.46 | 13.95 |
| 43 | 7.34 | 11.01 | 14.68 |
| 44 | 7.74 | 11.61 | 15.48 |
| 45 | 8.18 | 12.27 | 16.37 |
| 46 | 8.68 | 13.01 | 17.35 |
| 47 | 9.22 | 13.84 | 18.44 |
| 48 | 9.78 | 14.67 | 19.56 |
| 49 | 10.32 | 15.48 | 20.64 |
| 50 | 10.88 | 16.32 | 21.76 |
| 51 | 11.46 | 17.20 | 22.93 |
| 52 | 12.11 | 18.17 | 24.22 |
| 53 | 12.82 | 19.23 | 25.63 |
| 54 | 13.63 | 20.44 | 27.25 |

17

**Premium Chart A**
**Inflation Protection Plan A**
**Future Purchase Option**
**Monthly Premiums Per Person**

| AGE | Standard Lifetime Maximum | | | High Option Lifetime Maximum | | |
|---|---|---|---|---|---|---|
| | $100/DAY | $125/DAY | $150/DAY | $100/DAY | $125/DAY | $150/DAY |
| 18-24 | $4.73 | $5.91 | $7.09 | $6.30 | $7.88 | $9.46 |
| 25 | 5.14 | 6.42 | 7.71 | 7.00 | 8.75 | 10.50 |
| 26 | 5.30 | 6.63 | 7.95 | 7.28 | 9.10 | 10.91 |
| 27 | 5.48 | 6.85 | 8.22 | 7.58 | 9.48 | 11.37 |
| 28 | 5.67 | 7.09 | 8.50 | 7.91 | 9.88 | 11.86 |
| 29 | 5.86 | 7.33 | 8.79 | 8.24 | 10.30 | 12.36 |
| 30 | 6.07 | 7.59 | 9.10 | 8.61 | 10.76 | 12.91 |
| 31 | 6.32 | 7.89 | 9.47 | 9.03 | 11.29 | 13.54 |
| 32 | 6.60 | 8.24 | 9.89 | 9.50 | 11.88 | 14.25 |
| 33 | 6.93 | 8.67 | 10.40 | 10.05 | 12.56 | 15.07 |
| 34 | 7.29 | 9.11 | 10.94 | 10.64 | 13.30 | 15.96 |
| 35 | 7.69 | 9.61 | 11.53 | 11.28 | 14.10 | 16.92 |
| 36 | 8.13 | 10.16 | 12.19 | 11.98 | 14.98 | 17.97 |
| 37 | 8.61 | 10.77 | 12.92 | 12.76 | 15.95 | 19.15 |
| 38 | 9.14 | 11.42 | 13.71 | 13.61 | 17.01 | 20.41 |
| 39 | 9.70 | 12.13 | 14.55 | 14.52 | 18.14 | 21.77 |
| 40 | 10.00 | 12.50 | 15.00 | 15.02 | 18.78 | 22.53 |
| 41 | 10.44 | 13.05 | 15.66 | 15.73 | 19.66 | 23.60 |
| 42 | 10.91 | 13.64 | 16.37 | 16.50 | 20.62 | 24.75 |
| 43 | 11.47 | 14.34 | 17.21 | 17.39 | 21.73 | 26.08 |
| 44 | 12.12 | 15.15 | 18.18 | 18.41 | 23.01 | 27.62 |
| 45 | 12.91 | 16.13 | 19.36 | 19.63 | 24.54 | 29.45 |
| 46 | 13.31 | 16.64 | 19.97 | 20.29 | 25.36 | 30.43 |
| 47 | 14.18 | 17.72 | 21.27 | 21.63 | 27.04 | 32.45 |
| 48 | 15.12 | 18.90 | 22.69 | 23.17 | 28.96 | 34.76 |
| 49 | 16.11 | 20.14 | 24.17 | 24.84 | 31.05 | 37.27 |
| 50 | 17.22 | 21.53 | 25.83 | 26.66 | 33.33 | 39.99 |
| 51 | 18.66 | 23.32 | 27.98 | 28.84 | 36.05 | 43.26 |
| 52 | 19.90 | 24.87 | 29.84 | 30.45 | 38.07 | 45.68 |
| 53 | 21.94 | 27.43 | 32.92 | 32.92 | 41.15 | 49.38 |
| 54 | 23.97 | 29.96 | 35.95 | 35.02 | 43.77 | 52.53 |
| 55 | 26.47 | 33.08 | 39.70 | 37.66 | 47.07 | 56.49 |
| 56 | 29.32 | 36.65 | 43.98 | 40.84 | 51.06 | 61.27 |
| 57 | 32.22 | 40.27 | 48.33 | 44.34 | 55.43 | 66.52 |
| 58 | 35.53 | 44.42 | 53.30 | 48.75 | 60.94 | 73.13 |
| 59 | 38.78 | 48.48 | 58.17 | 53.28 | 66.60 | 79.92 |
| 60 | 42.34 | 52.92 | 63.51 | 58.36 | 72.95 | 87.54 |
| 61 | 46.06 | 57.58 | 69.09 | 63.74 | 79.67 | 95.61 |
| 62 | 49.51 | 61.89 | 74.27 | 68.73 | 85.91 | 103.10 |
| 63 | 53.79 | 67.24 | 80.69 | 74.86 | 93.57 | 112.28 |
| 64 | 57.54 | 71.93 | 86.31 | 80.27 | 100.34 | 120.41 |
| 65 | 62.20 | 77.75 | 93.29 | 87.00 | 108.75 | 130.50 |

**Premium Chart B**
**Inflation Protection Plan B**
**Automatic Benefit Increase Option**
**Monthly Premiums Per Person**

| AGE | Standard Lifetime Maximum | | | High Option Lifetime Maximum | | |
|---|---|---|---|---|---|---|
| | $100/DAY | $125/DAY | $150/DAY | $100/DAY | $125/DAY | $150/DAY |
| 18-24 | $13.50 | $16.88 | $20.25 | $18.01 | $22.51 | $27.02 |
| 25 | 14.68 | 18.35 | 22.02 | 20.00 | 25.00 | 30.00 |
| 26 | 15.15 | 18.93 | 22.72 | 20.79 | 25.99 | 31.19 |
| 27 | 15.66 | 19.57 | 23.48 | 21.66 | 27.08 | 32.50 |
| 28 | 16.17 | 20.21 | 24.25 | 22.54 | 28.18 | 33.81 |
| 29 | 16.67 | 20.83 | 25.00 | 23.44 | 29.29 | 35.15 |
| 30 | 17.20 | 21.50 | 25.80 | 24.39 | 30.49 | 36.59 |
| 31 | 17.83 | 22.29 | 26.74 | 25.49 | 31.86 | 38.23 |
| 32 | 18.53 | 23.16 | 27.80 | 26.69 | 33.36 | 40.04 |
| 33 | 19.39 | 24.24 | 29.09 | 28.10 | 35.13 | 42.16 |
| 34 | 20.31 | 25.39 | 30.46 | 29.63 | 37.04 | 44.45 |
| 35 | 21.30 | 26.62 | 31.95 | 31.24 | 39.06 | 46.87 |
| 36 | 22.34 | 27.92 | 33.50 | 32.93 | 41.16 | 49.39 |
| 37 | 23.38 | 29.22 | 35.07 | 34.64 | 43.31 | 51.97 |
| 38 | 24.34 | 30.43 | 36.51 | 36.24 | 45.30 | 54.36 |
| 39 | 25.24 | 31.55 | 37.86 | 37.75 | 47.19 | 56.63 |
| 40 | 25.31 | 31.64 | 37.96 | 38.01 | 47.51 | 57.02 |
| 41 | 25.68 | 32.10 | 38.52 | 38.70 | 48.37 | 58.05 |
| 42 | 26.16 | 32.70 | 39.23 | 39.55 | 49.44 | 59.33 |
| 43 | 26.84 | 33.55 | 40.26 | 40.69 | 50.86 | 61.03 |
| 44 | 27.69 | 34.61 | 41.54 | 42.07 | 52.58 | 63.10 |
| 45 | 28.81 | 36.01 | 43.22 | 43.83 | 54.79 | 65.75 |
| 46 | 29.09 | 36.36 | 43.63 | 44.32 | 55.40 | 66.49 |
| 47 | 30.38 | 37.98 | 45.57 | 46.36 | 57.95 | 69.53 |
| 48 | 31.90 | 39.88 | 47.86 | 48.88 | 61.10 | 73.32 |
| 49 | 33.56 | 41.95 | 50.34 | 51.75 | 64.58 | 77.62 |
| 50 | 35.48 | 44.35 | 53.22 | 54.92 | 68.65 | 82.39 |
| 51 | 38.02 | 47.53 | 57.03 | 58.78 | 73.47 | 88.17 |
| 52 | 40.07 | 50.09 | 60.11 | 61.34 | 76.68 | 92.01 |
| 53 | 43.64 | 54.55 | 65.46 | 65.46 | 81.83 | 98.19 |
| 54 | 47.07 | 58.84 | 70.60 | 68.77 | 85.96 | 103.15 |
| 55 | 51.30 | 64.12 | 76.94 | 72.98 | 91.23 | 109.48 |
| 56 | 56.02 | 70.02 | 84.03 | 78.03 | 97.54 | 117.05 |
| 57 | 60.63 | 75.79 | 90.94 | 83.45 | 104.31 | 125.18 |
| 58 | 65.65 | 82.06 | 98.47 | 90.08 | 112.60 | 135.12 |
| 59 | 70.18 | 87.72 | 105.26 | 96.42 | 120.52 | 144.63 |
| 60 | 75.00 | 93.75 | 112.50 | 103.36 | 129.23 | 155.07 |
| 61 | 80.02 | 100.02 | 120.02 | 110.72 | 138.40 | 166.08 |
| 62 | 84.64 | 105.80 | 126.96 | 117.50 | 146.87 | 176.25 |
| 63 | 91.04 | 113.80 | 136.56 | 126.68 | 158.36 | 190.03 |
| 64 | 96.83 | 121.04 | 145.25 | 135.09 | 168.86 | 202.63 |
| 65 | 104.25 | 130.32 | 156.38 | 145.63 | 182.29 | 218.75 |

For $175 per day rates, multiply the $100 rates by 1.75. For $200 per day rates, multiply the $100 rates by 2.0.
For $225 per day rates, multiply the $100 rates by 2.25. For $250 per day rates, multiply the $100 rates by 2.5.
Please call the Plan Administrator toll-free at 1-800-603-7999 for further information or Plan C Rates.

65. These "premiums based on age" charts and related marketing materials depict the same rate for everyone of a certain age, and like the language in the Group Policies, this

language suggests that rates will not change unless they change for "everyone in your age group"—not by residence of the insured or place of purchase. Moreover, the text of the Group Policies conveys that if premiums increase, they will be increased by the same amount for everyone who bought coverage at the same age in the nationwide insurance pool.

66.     The term "age group" is not defined elsewhere in the brochures or the Group Policies. According to the plain language of this term, how it was depicted in the marketing materials highlighted above, and the reasonable expectations and understanding of an insured, "age group" refers to all insureds who bought coverage at the same age in the nationwide insurance pool.

67.     The various tables presented to the Class define premium classes by age and benefit level. According to the tables, these rates govern policies for all insureds in each age group nationwide, with no differences based upon state of residency. A reasonable insured would further understand that he or she was part of a nationwide premium class.

68.     In addition to these marketing materials, Continental enrolled insureds through their website www.ltcbenefits.com. Insureds enrolling through this website, like Mr. Miller, were told that they were being provided with "Age-based premiums" and that their specific premium quote using the "premium calculator" on the website "is based on the date of birth [] and a plan effective date of []" with no other qualifications. Indeed, back in 2009 the premium quoted by the "premium calculator" for Mr. Miller, $89.53 per month, is precisely what he paid upon enrollment and up through the first rate increase. Along with the premium quote from the "premium calculator" the website told Mr. Miller, and other Members of the Classes, "Your premium will not increase as you grow older. It will remain the same unless the rates are

increased for everyone in your age group; you cannot be singled out for a rate increase for any
reason."

**B.      Continental seeks and implements premium increases that vary within the same
premium class.**

69.      Originally, Plaintiff Boaden's certificate carried a "semi-monthly premium" of
$33.54, or annual premium of $804.96. Over the years, Plaintiff voluntarily exercised benefit
increase options, which increased his annual premiums to $1,062.60 and increased the benefits
available under the certificate.[7] This was his annual premium amount during the period just
before Continental's rollout of its unlawful nationwide rate increase program on all GLTC 2
Policies.

70.      In November 2016, Continental wrote to Plaintiff Boaden stating that his
premium would increase by 95.5% in a phased manner with a 70% increase occurring as of
January 1, 2017, and a 15% increase occurring on January 1, 2018. The letter stated that the new
quarterly premium payment after the 70% increase would change from $265.65 to $451.61. The
new annual premium after the 2017 increase was $1,806.44, up from $1,062.60.

71.      In response, fearing additional future increases in premiums, Mr. Boaden elected
to eliminate his inflation protection feature, an option offered by Continental, thus locking in his
daily benefit at $307/per day. But for the 70% rate increase, Mr. Boaden would not have
eliminated his inflation protection feature. Eliminating the inflation protection feature reduced
Mr. Boaden's premiums down to $173.17 per quarter. Even after eliminating his inflation rider

---

[7] These voluntary increases are separate from the mandatory increases Plaintiffs challenge in
this complaint, and Plaintiffs do not challenge them here except to the extent that they were
further raised above a uniform level by Continental.

however, Continental still increased his premium 15% on January 1, 2018, to $199.14 per quarter.

72. On October 6, 2022, Continental wrote to Mr. Boaden and notified him that his premium would increase another 8.60% effective January 1, 2023, to $216.27 per quarter.

73. Originally, Plaintiff Carlson's certificate carried a "quarterly premium" of $88.64. Over the years, Plaintiff voluntarily exercised benefit increase options, which increased his quarterly premium to $151.65 and increased the benefits available under the certificate.[8] This was his annual premium amount during the period just before Continental's rollout of its unlawful nationwide rate increase program on the Policies.

74. In November 2016, Continental wrote to Plaintiff Carlson stating that his premium would increase by 95.5% in a phased manner with a 70% increase occurring as of January 1, 2017, and a 15% increase occurring on January 1, 2018. The new quarterly premium after the 2017 increase was $257.81, up from $151.65. The new quarterly premium after the 2018 increase was $296.47.

75. Mr. Costello's annual premium amount was $251.76 during the period just before Continental's rollout of its unlawful nationwide rate increase program on the Policies.

76. In November 2016, Continental wrote to Plaintiff Costello stating that his premium would increase by 95.5% in a phased manner with a 70% increase occurring as of January 1, 2017, and a 15% increase occurring on January 1, 2018. The letter stated that the new annual premium payment after the 70% increase would change from $251.76 to $428.00. The new annual premium after the 15% January 1, 2018, increase was $492.19.

---

[8] These voluntary increases are separate from the mandatory increases Plaintiffs challenge in this complaint, and Plaintiffs do not challenge them here except to the extent that they were further raised above a uniform level by Continental.

21

77.     Originally, Plaintiff Miller's certificate carried a monthly premium of $89.53, or quarterly premium of $268.59. This was his premium amount during the period just before Continental's rollout of its unlawful nationwide rate increase program on all the Policies.

78.     On August 9, 2016, Continental wrote to Plaintiff Miller stating that his premium would increase by 15% as of October 1, 2016, to $308.88 per quarter. On December 29, 2017, Continental wrote to Plaintiff Miller stating that his premium would increase by 10% as of April 1, 2018, to $339.76 per quarter. On March 29, 2019, Continental wrote to Plaintiff Miller stating that his premium would increase by 15% as of July 2019 to $390.73 per quarter. On March 31, 2021, Continental wrote to Plaintiff Miller stating that his premium would increase by 15% as of July 1, 2021, to $449.33 per quarter, which is what Mr. Miller pays today. Continental has requested an additional 48.4% increase from the Connecticut Department of Insurance, which is pending.

79.     In the November 2016 letters, over two decades after Continental started issuing certificates to insureds under the Policies, Continental disclosed for the first time to Plaintiffs that the premium increase is not uniform for everyone in the same age group or premium class:

6. **Will the premium rate increase be effective for everyone?**
Since Continental Casualty Company (CCC) must receive approval or authorization from certain states prior to implementing an increase, it is possible that these states will not approve or authorize the same percentage increase or authorize an increase at the same time. It is also possible some states may deny CCC's request for an increase, or require it be reduced or spread over multiple years. In addition, impacted certificate holders have different premium due dates and have different premium billing mechanisms. Premium increases will be staggered in accordance with the timing of regulatory approvals or authorizations and method of premium payment.

80.     While the letters cautioned about the possibility of varying increases, it was a certainty that due to Continental's chosen course to seek the maximum rate available in each state without regard to its promises of nationally uniform rates, rate increases would vary from state to state. As noted above, in 2015 CNA sought a 15% rate increase in Maryland, while

simultaneously seeking a 95.5% rate increase in Illinois and a 112.50% rate increase in Kansas, on the very same Group Policies - it was not merely "possible" that the ultimate rate increases would vary, it was already a given fact.

81.     Plaintiffs and the Classes have been subjected to disparate increases in the cost of their long-term care premiums depending upon the state in which they reside. As reported to the Pennsylvania Department of Insurance by CNA in May of 2022, the rate increases sought and received have little to no uniformity, destroying any semblance of the promised nationwide age-based premium class. *See* Exhibit A ("GLTC State Status Listing As of 5/3/2022").

82.     For example, Continental's "GLTC State Status Listing As of 5/3/2022" (Exhibit A) reveals that insureds covered by rate filings in Alaska, Arkansas, Wisconsin, Michigan, North Dakota, South Dakota, Nebraska, Pennsylvania, and Tennessee, have faced cumulative rate increases exceeding 100%, whereas insureds covered by rate filings in California, Colorado, Virginia, and Vermont ***have not had any rate increases implemented at all***.

83.     These disparate increases across the country violate the terms of the Group Policies because Continental has not lived up to its promise that it would not increase rates unless it did so for "everyone in your age group" or met its duty to increase premiums "based on [the insured's] premium class," which is an insured's age group at the time of application regardless of the state of residence.

84.     Continental's actions breach the terms of the Group Policies. The Group Policies permit Continental to increase premiums only when premiums are increased "for all other insureds in the same premium class." As alleged above, four judges of this Court have upheld breach-of-contract claims arising from Continental's unequal premium increases under the same policy language. *Sieving v. Continental Casualty Company*, Case No. 1:20-cv-05127, Dkt. No.

36; *Brown v. Continental Casualty Company*, Case No. 1:21-cv-02349, Dkt. No. 26; *Cheslow v. Continental Casualty Company*, Case No. 1:21-cv-04010, Dkt. No. 34; and *Gunn v. Continental Casualty Company*, Case No. 1:18-cv-03314, Dkt. No. 117.

85.     Continental's actions also constitute fraud because they contravene representations suggesting that any increases would apply to all other policyholders with the same type of coverage and of the same age, and because Continental fraudulently concealed its intention to raise premiums on a state-to-state basis notwithstanding these representations. Continental's disparate increases render its marketing brochure and other marketing materials unfair, false, deceptive, and misleading because Continental has not applied the same premium increase to "everyone in your age group." Four judges of this Court have upheld claims of fraudulent concealment arising from Continental's misleading representations and unequal premium increases under the same or similar statements in marketing materials. *Sieving v. Continental Casualty Company*, Case No. 1:20-cv-05127, Dkt. No. 36; *Brown v. Continental Casualty Company*, Case No. 1:21-cv-02349, Dkt. No. 26; *Cheslow v. Continental Casualty Company*, Case No. 1:21-cv-04010, Dkt. No. 34; and *Gunn v. Continental Casualty Company*, Case No. 1:18-cv-03314, Dkt. No. 117.

86.     Continental's own contract does not give it the right to seek premium increases unless it does so on terms that are consistent with a nationwide premium class. As a result of Continental's approach to rate increases, insureds of the same age at application now bear different costs for their long-term care coverage, violating the terms of the contract and contravening the marketing statements.

87.     As an established insurance company with significant experience in the industry, Continental knew when it issued the Group Policies and distributed its marketing documents, the

challenges associated with limiting increases to a nationwide premium class. Nonetheless, Continental chose to promise and represent that premium increases would take place on a classwide basis. To the extent that Continental was or became aware that it would seek state-by-state premium increases, Continental misstated the basis upon which future premium increases would occur and concealed its intention to vary the timing and amount of premium increases for subsets of each premium class or age group, state by state.

## VI.    CLASS ACTION ALLEGATIONS

88.    This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23. Plaintiffs bring all claims herein individually and as a class action under Federal Rule of Civil Procedure 23.

89.    Plaintiffs seek to represent the following classes:

(1) Damages Class: All individuals who are or were insured under a Continental Casualty Company group long-term care insurance policy that stated, "We can, however, change the Insured's premiums based on his or her premium class, but only if We change the premiums for all other Insureds in the same premium class[,]" with no reference to "state" specific rate differences, or similarly worded group long term care insurance policies from January 1, 2015, to the date of judgment and who paid premiums after they were subjected to a premium rate increase.

(2) Injunctive Relief Class: All individuals who are or were insured under a Continental Casualty Company group long-term care insurance policy that stated, "We can, however, change the Insured's premiums based on his or her premium class, but only if We change the premiums for all other Insureds in the same premium class[,]"with no reference to "state" specific rate differences, or similarly worded group long term care insurance policies from January 1, 2015, to the date of judgment, who have surrendered, reduced and/or dropped benefits and/or coverage after CNA sent any notice of or implemented premium increases for the group.

25

90.     The Damages Class and the Injunctive Relief Class are collectively referred to as the "Classes." While the exact number of members of the Classes cannot be determined, there are at least one hundred thousand members of the Classes nationwide. The members of the Classes are therefore so numerous that joinder of all members is impracticable. The exact number of Members of the Classes can readily be determined by documents produced by Continental.

91.     There are questions of fact and law common to the Classes, including:

i.      Whether Continental could only seek to increase long-term care premiums for Group Policies on terms that are consistent with a nationally uniform increase for the entire premium class;

ii.     Whether Continental ever sought to increase long-term care premiums for some, but not all, members of the premium class;

iii.    Whether Continental ever sought to increase long-term-care premiums on terms inconsistent with a nationally uniform increase for the entire premium class;

iv.     Whether, under Group Policies, a "premium class" is meant to include the state of residency as a criterion;

v.      Whether a "premium class" for Group Policies refers to those insureds nationwide who were the same age when they purchased their coverage and selected the same level of benefits;

vi.     Whether Continental misrepresented the terms of its Group Policies;

vii.    Whether Continental misrepresented its intent to raise premiums state by state;

viii.   Whether, through each of the foregoing practices, Continental fraudulently misrepresented its long-term care coverage while marketing and selling coverage under the Group Policies;

ix.     Whether, through each of the foregoing practices, Continental fraudulently concealed facts in the marketing and sale of long-term care coverage;

x.      Whether, through each of the foregoing practices, Continental breached its contracts with its insureds;

xi.   Whether Continental's actions were unreasonable, frivolous, unfounded, reckless, malicious, or willful;

xii.  Whether Plaintiffs and members of the Classes are entitled to disgorgement of ill-gotten gains;

xiii. Whether Plaintiffs and members of the Classes are entitled to an award of compensatory damages;

xiv.  Whether Plaintiffs and members of the Classes are entitled to an award of punitive damages;

xv.   Whether Plaintiffs and members of the Classes are entitled to an award of attorney's fees; and

xvi.  Whether Plaintiffs and members of the Classes are entitled to declaratory or injunctive relief.

92.   Plaintiffs have the same interests in this matter as all other members of the Classes, and their claims are typical of all members of the Classes. Plaintiffs' claims are coincident with and not antagonistic to those of other members of the Classes that Plaintiffs seek to represent. Plaintiffs and all members of the Classes have sustained damages arising out of Continental's common course of conduct as outlined herein. The damages of each member of the Classes were caused by Continental's wrongful conduct.

93.   Plaintiffs are committed to pursuing this action and have retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiffs will fairly and adequately represent the interests of the other members of the Classes.

94.   Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Continental's actions generally apply to the Classes as a whole, and Plaintiffs seek, *inter alia*, equitable remedies regarding the Classes as a whole.

95.   Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes, and a class action is the superior method for

27

fair and efficient adjudication of the controversy. The likelihood that individual members of the

Classes will prosecute separate actions is remote due to the time and expense necessary to

conduct such litigation. Plaintiffs' counsel, highly experienced in insurance litigation and class

action litigation, foresees little difficulty in the management of this case as a class action.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

96.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth

herein.

97.     The United Policy, a Group Policy, issued by Continental constitutes a contract

between Continental and Plaintiff Boaden.

98.     The CNA Policy, a Group Policy, issued by Continental constitutes a contract

between Continental and Plaintiffs Carlson and Costello.

99.     The Westinghouse Policy, a Group Policy, issued by Continental constitutes a

contract between Continental and Plaintiff Miller.

100.    Under the express terms of the Group Policies, Continental agreed that it could

not change the insureds' premiums because of individual issues of age or health.

101.    Under the express terms of the Group Policies, Continental agreed that while it

could "change the Insured's premiums based on his or her premium class," it could do so "only if

We change the premiums for all other Insureds in the same premium class."

102.    Continental's Group Policies are standardized insurance policy documents, and

the same terms govern premium increases for each age-based premium class under Continental's

Group Policies nationwide.

103.    Continental breached its contracts with Plaintiffs and the Classes by seeking rate increases without regard for its promise of a nationally uniform rate. Continental sought premium increases under the Group Policies in different states at different times, and in different amounts, irrespective of and in violation of the policy language prohibiting increases that are not uniform across the premium class.

104.    Because of Continental's breaches, Continental imposed—and continues to impose—premium increases that did not comply with the contract, resulting in disparate increased premiums for Plaintiffs and the Classes.

**SECOND CAUSE OF ACTION**
**(FRAUD)**

105.    Plaintiffs re-allege and incorporates the preceding paragraphs as if fully set forth herein.

106.    Continental's brochures, rate charts, and other marketing materials contained deceptive statements about future premium increases. For example, the brochures state: "Your premium is based on your age on your application date. Your premium will not increase because you grow older. It will remain the same unless the rates are increased for everyone in your age group."

107.    Long-term care premium increases are frequently subject to oversight by state insurance commissioners, and the timing and amount of premium increases generally varies from state to state depending on the actions of a given state's insurance commissioner. Continental knew that it planned to increase premiums in amounts that varied from one state to the next, depending upon the regulatory environment in each state.

108.    The foregoing representations were deceptive, false, and misleading because at the time that they were made, Continental knew that it would not uniformly increase premiums

29

for everyone in a given age group but would raise premiums at different intervals and in different amounts from one state to the next. As a result, Plaintiffs and the Class could be forced to bear (and did bear) a greater cost of premiums than they should have because the amount of their premiums exceeded premiums charged to members of the same age group in other states, forcing them to bear a greater share of the cost of the policy than members of the same age group in other states.

109. Continental intended that the foregoing deceptive representation be relied upon by purchasers of its long-term care insurance policies. Plaintiffs and the Classes were exposed to and relied upon the foregoing deceptive representations while purchasing long-term care coverage from Continental. Plaintiffs and the Classes would not have purchased Continental's long-term care coverage had they known that premium increases would vary state by state. The nature and amount of premium increases for long-term care coverage are facts highly material to Plaintiffs and the Classes because such coverage is purchased to provide long-term financial stability.

110. Because of Continental's false, deceptive, and misleading representations, Plaintiffs and the Classes have suffered injury and will suffer injury in the future in the form of an insurance product materially different from what was promised and premium increases that should not have occurred or that should have been lower.

**THIRD CAUSE OF ACTION**
**(FRAUDULENT CONCEALMENT)**

111. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

112.    Continental's brochures, rate charts, and other marketing materials failed to disclose that future premium increases would not be uniform across an age group but would vary from one state to the next.

113.    As Continental well knew, long-term care premium increases are frequently subject to oversight by state insurance commissioners. Continental knew that it planned to increase premiums in amounts that varied from one state to the next, depending upon the regulatory environment in each state, and not on terms that were consistent with a nationally uniform premium increase.

114.    Continental's failure to disclose its intention to seek premium increases that varied in timing and amount from state to state, rather than on terms that were consistent with a uniform increase across the age group, constituted a fraudulent omission. As a result, Plaintiffs and the Classes could be forced to bear (and did bear) a greater cost of premiums than they should have because their premiums exceeded premiums charged to members of the same age group in other states, forcing them to bear a greater share of the cost of the policy than members of the same age group in other states.

115.    By omitting this information, Continental intended to induce a false belief in Plaintiffs and the Classes that premium increases would be sought on terms consistent with premiums that are uniform in timing and amount across a given age group. The nature and amount of premium increases for long-term care coverage are facts highly material to Plaintiffs and the Classes because such coverage is purchased to provide long-term financial stability.

116.    Plaintiffs and the Classes would not have purchased Continental's long-term care coverage or paid the same amount had they known that premium increases would vary state by state.

31

117.     Because of Continental's fraudulent omission, Plaintiffs and the Classes have suffered injury and will suffer injury in the future in the form of an insurance product materially different from what was promised and premium increases that should not have occurred or that should have been lower.

## FOURTH CAUSE OF ACTION
### (DECLARATORY RELIEF)

118.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

119.     Plaintiffs brings this cause of action for themselves and the Classes pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration that, for those who maintain long-term care insurance under the Group Policies with Continental, it is a violation of the insurance contract for Continental to seek premium increases on terms that are inconsistent with a nationally uniform premium increase.

120.     This Court has the power to declare the rights of the Continental policyholders and those who would be insured under such policies and who may suffer similar losses.

121.     Plaintiffs, for himself and on behalf of the Classes, seeks a declaration of his rights under the Continental policy, and seeks a declaration of the rights and liabilities of the parties herein.

122.     Absent judicial intervention, Continental will seek to increase premiums in amounts that vary state by state rather than on terms that would ensure uniform increases for the entire premium class or age group.

123.     Regarding Continental's continuing unlawful practices, Plaintiffs have no plain, speedy, or adequate remedy at law, the interests of the parties favor an injunction, and an injunction is in the public interest. Plaintiffs therefore seek an order requiring Continental to offer

32

reinstatement of benefits and coverage for plaintiffs and class members who reduced or dropped benefits or coverage after Continental implemented or gave notice of premium increases.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for the following judgment:

A.      An Order certifying this action as a class action, including certifying each cause of action under the appropriate subsection of Fed. R. Civ. P. 23;

B.      An Order appointing Plaintiffs as class representatives and appointing the undersigned counsel to represent the Classes;

C.      Disgorgement of ill-gotten gains;

D.      Declaratory and injunctive relief, including an injunction requiring Continental to offer to reinstate benefits or coverage for plaintiffs and class members who reduced or dropped benefits or coverage after Continental implemented or gave notice of premium increases;

E.      Compensatory damages;

F.      Punitive damages;

G.      An award of attorney's fees and costs, as provided by law and/or as would be reasonable from any monies recovered for or benefits bestowed upon the Classes; and

H.      Such other and further relief as this Court may deem just, equitable, or proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully request a jury trial for all matters so triable.

DATED: March 9, 2023                         Respectfully submitted,

                                             HAGENS BERMAN SOBOL SHAPIRO LLP

                                             By: */s/ Daniel J. Kurowski*
                                                    Daniel J. Kurowski
                                             455 North Cityfront Plaza Drive, Suite 2410
                                             Chicago, IL 60611
                                             Telephone: (708) 628-4949
                                             Dank@hbsslaw.com

Robert B. Carey (*pro hac vice to be filed*)
John M. DeStefano (*pro hac vice to be filed*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
rob@hbsslaw.com
johnd@hbsslaw.com

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com

Sean K. Collins
LAW OFFICES OF SEAN K. COLLINS
184 High Street, Suite 503
Boston, MA 02110
Telephone: (855) 693-9256
Facsimile: (617) 227-2843
sean@neinsurancelaw.com

34

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's CM/ECF system, on March 9, 2023. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

DATED: March 9, 2023                                      */s/ Daniel Kurowski*
                                                                        Daniel Kurowski